# A. HARTUPEE v. CITY OF PITTSBURGH ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY, IN EQUITY.

Argued November 5, 1889—Decided March 24, 1890.
[To be reported.]

1. Fraud in the procurement of an award is admissible in an action at law
thereon; and when one party seeks to recover a demand upon a con-
tract, notwithstanding an award against him to enforce which no action
at law has been brought, he is entitled to maintain a bill in equity to
set aside the award on the ground of fraud: per STOWE, P. J.

2. To sustain such a bill, it is essential to aver and prove that the party
benefited by the award participated in the fraud charged; but evidence
that the arbitrator was partial and unfair, and knowingly made an im-
proper decision, is insufficient for that purpose, without evidence that
the party benefited colluded with the arbitrator, or practiced a fraud to
procure the award.

3. When a municipal contract provided that all disputes arising should
be submitted to the city officer having the supervision of its perform-
ance, and, a dispute arising, the officer awarded in favor of the city,
evidence that the award was known by him to be grossly unjust when
he made it, that he was hostile to the contractor, and was receiving a
salary from the city, is insufficient to connect the city with any fraud
in the award.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 213 October Term 1889, Sup. Ct.; court below, No. 753
December Term 1887, C. P. No. 1, in Equity.

On November 23, 1887, Andrew Hartupee filed a bill in
equity against the city of Pittsburgh and Joseph L. Lowry,
averring in substance :

That on August 22, 1872, the plaintiff entered into a con-
tract with said city for the construction by him of two pump-
ing engines for the city water works, for the price of $423,550,
and on September 4, 1873, entered into a similar contract to
construct two other engines for the price of $375,000; that
under said contracts the city was to furnish the plaintiff with
the requisite plans, specifications and detail drawings, and was

Statement of Facts.

to provide the foundations for the engines; that the plaintiff was to have the first pair of engines completed, ready for service, on or before November 15, 1873, and the second pair, on or before November 15, 1874; that the plaintiff diligently prosecuted the work of constructing said engines, and constructed them in compliance with the requirements of the contracts, but was delayed in their completion until February 7, 1879, through the fault of the city in not furnishing the plans, specifications and drawings, and in not providing the foundations, at the times when they should have been provided under the contracts; that on February 7, 1879, the four engines being substantially completed, the city took forcible possession of them, and has since used them, and they have been and are performing the work for which they were designed; that the city is indebted to the plaintiff upon said contracts for an unpaid balance of $305,370.16, with interest from February 7, 1879; that any disputes which might arise under said contracts, or touching the quantity, quality or value of any work done thereunder, were by the terms of the contracts to be referred to the mechanical engineer of the city, whose decision should be final and conclusive; that the city fraudulently and by collusion with Joseph L. Lowry, its mechanical engineer, procured from said Lowry an award finding that there was nothing due from the city to the plaintiff, but that, on the contrary, the plaintiff was indebted to the city in sums aggregating $317,500, for damages occasioned to it by delay in the completion of the engines and by the use of defective materials in their construction, said award being contrary to the facts as they were well known to the said city and the said Lowry, and contrary to the justice of the case ; that said award bankrupted the plaintiff, and he was without adequate remedy at law. The prayers for relief were that said award be set aside and annulled as fraudulent and void; that the city be decreed to pay to the plaintiff the sum of $305,370.16, with interest from February 7, 1879; and for general relief.*

---

\* Prior to the award mentioned in the bill, Hartupee brought a suit against the city of Pittsburgh to recover the balance claimed to be due him upon his contracts. At the trial he was nonsuited, and the judgment was affirmed by the Supreme Court, partly upon the ground that under the contracts the plaintiff should have submitted or offered to submit the dis-

## Opinion of Court below.

The defendants having demurred to the bill, the court, STOWE, P. J., after argument, filed therein the following opinion and decree:

The bill, in this case, very distinctly charges the city of Pittsburgh and Joseph L. Lowry with a fraudulent combination and conspiracy to cheat him out of his just dues, through the agreement contained in the contracts between the plaintiff and the city, that all questions or disputes between the parties under the contracts should be referred to said Lowry, the mechanical engineer of the city, whose decision was to be final and conclusive, under which, acting as such arbitrator, he was induced by the city, and persons in its employ and acting for it in this behalf, to knowingly make a false and fraudulent award in favor of the city and against him, in opposition to facts well known to said parties, and contrary to justice and good faith and to his great injury and loss.

—After referring to certain averments of the bill, the opinion proceeded:

If these facts are true, as for the present purpose we must suppose, it is clear that the plaintiff has sustained great and manifest wrong, which should be righted. The only question then is, has equity jurisdiction; or must plaintiff prosecute his claim at law.

It seems to be settled law in England and several of the United States, that a defendant in an action on the arbitration bond for non-performance of award, or on the award itself, cannot at common law plead misconduct, fraud or collusion, on the part of the arbitrator, and that the remedy is only by bill in equity, seeking to have the award declared null and void, or to have the future prosecution of the suit enjoined: Morse on Arb. and Award, 542–3.

---

pute to the mechanical engineer: Hartupee v. Pittsburgh, 97 Pa. 107. After this decision, the mechanical engineer proceeded to make an award at the request of the city, and made the award referred to in the bill. The city then brought two suits upon the award against the sureties of Hartupee in bonds given to secure the performance of his contracts. These suits were transferred to Beaver county for trial. One of them was tried and judgment was rendered therein for the city, which on writ of error was affirmed at October Term 1884: Hostetter v. Pittsburgh, 107 Pa. 419.

Opinion of Court below.

In Sperrow v. Wood, 5 Halst. 7, Ewing, C. J., cites with approbation Sergeant Williams' note to Veale v. Harmer, in which he says: "Hence it seems to follow that, to an action on an award the defendant cannot plead collusion or other misconduct of the arbitrator in avoiding the award." In Barlow v. Todd, 3 Johns. *368, Spencer, J., says: "It is now well established that, at law, nothing dehors the award, invalidating it, can be pleaded or given in evidence to the jury. Chitty says: ' Partiality or improper conduct in the arbitrator cannot be pleaded at bar to an action on the bond conditioned for performance of an award:' 2 Chitty 477." But, while this seems to be the case elsewhere, I am of the opinion that in this state such a rule would not be enforced, and that a plea of fraud and collusion between the arbitrator and one of the parties, would be good in an action upon the award to recover an amount claimed to be due under it. Such seems to be intimated by Mercur, C. J., in Hostetter v. Pittsburgh, 107 Pa. 435, where he says: "The award, like a judgment, may undoubtedly be impeached for fraud, which avoids all judicial acts. Partiality and some improper conduct of the arbitrator in making the award will not impeach it, unless the party benefited thereby be implicated in that misconduct."

While, then, we think that the matters set up in this bill could be given in evidence upon an action by the city against Hartupee, to recover the amount found due by him, yet so long as the city might choose not to sue Hartupee, he could not make any defence, however much he might have been wronged and defrauded; and as to maintaining an action for what might be properly coming to him, he must sue on the contract and show as a part of his case the very award that he claims to be fraudulent. It seems that there is no difficulty in holding that, whatever may be the case, where an action is brought to enforce an award, so far as being allowed to set up an equitable defence is concerned, that equitable foundation should still be maintained where the purpose is to recover against a fraudulent award. To do complete justice, the only course is to sweep the award away. And here we find no difficulty as to authority.

Courts of equity have always exercised jurisdiction over awards, and the only mode of attaining relief against an award

Opinion of Court below.

obtained fraudulently, is by bill in equity : See Kerr on Injunctions; Kyd on Award. The only relief is in equity : Sisk v. Grey, 27 Md. 401. Brown, C. J., says : " But courts of equity will, in all such cases (fraudulent awards), grant relief, and upon due proof will set aside the award." In Sperrow v. Wood, supra, C. J. Ewing says : " In the chancery books there is a multitude of cases in which awards have been relieved from on the ground of partiality, corruption and misconduct of arbitrators." In Newland v. Douglass, 2 Johns. 62, the court says : " A court of chancery may relieve from the partiality and corruption of arbitrators." See Underhill v. Van Cortland, 2 Johns. Ch. 367.

We find, then, that equity has well established jurisdiction in cases such as that set out in the bill, and being of opinion that the plaintiff has no adequate and complete remedy at law under the facts stated therein, we overrule the defendants' demurrer and now order that they plead or answer or demur specially to plaintiff's bill, within twenty days hereafter.

The defendants thereupon answered, denying all the material averments of the bill ; and afterward, issue having been joined, the court, Stowe, P. J., by agreement of counsel made the following order :

And now, December 26, 1888, the court having, on the joint application of the plaintiff and defendants, consented to sit as master and examiner in this case and hear the testimony of both sides, and the preliminary question involved, now defines said preliminary question to which the testimony shall be confined, as follows: Whether the award of Joseph L. Lowry, mechanical engineer, specified in the bill, and in favor of the city of Pittsburgh, was induced in the manner as charged in the bill, by fraud and collusion between the said Joseph L. Lowry and the city of Pittsburgh, its agents or representatives.

At the hearing before Stowe, P. J., held in pursuance of the above order on December 31, 1888, the plaintiff, after putting in evidence the contracts referred to in the bill, made the following offer :

Counsel for plaintiff proposes to prove that the work was constructed substantially according to the contract ; that the

engines were taken and used by the city and have done the work for a period of almost ten years; that the delay in their erection was occasioned by the city and by the engineer and arbitrator, in not furnishing the foundations and detail drawings according to the contract; that the arbitrator knew this, and contributed to the delay himself by not furnishing drawings; that he, in making up his award, charged $100 a day for delay, when he admits in writing that the foundations were not completed for nearly a year after the time he charged the plaintiff $100 a day; that he notified the plaintiff at a particular time in 1875, that the foundations were ready, and when he made up his award, charged the plaintiff $100 a day for a long period of time previous to that date, and from that on it becomes a question of dispute as to who caused the delay, there being prior to that time no question or dispute about it; that the engineer and arbitrator condemned as worthless and defective a lot of work and material amounting to $900,000, which in July, 1878, he admitted was according to the contract, and that about one per cent of the entire cost, or eight or nine thousand dollars, would complete the work.

Objected to, as incompetent and irrelevant.

By the court: Objection sustained; exception.[1]

The plaintiff then called Mr. Thomas S. Bigelow, who testified that he was city solicitor of the city of Pittsburgh for nine years ending in January 1882; that during his official term hearings were had before Lowry as arbitrator in the controversy between Hartupee and the city, and the witness, as city solicitor, had general charge of the case and appeared before the arbitrator on behalf of the city; that shortly after the retirement of the witness from said office, he visited City Hall on other business, and happened to meet Lowry on the outside of his room in which a hearing was being held; and that after some conversation he asked him what would probably be the result of the case, whether he would find for the city or for Hartupee, to which Lowry replied that he would likely find for Hartupee in a sum approaching $50,000, as, taking the reserve estimate that was to be deducted and the cost of the broken material already taken out, and estimating the cost of the work in the future, it would leave a balance. The witness, denied that Lowry stated in that interview that he had already

made up his award in favor of Hartupee for $50,000, and that he, the witness, insisted on Lowry's not delivering the award, but making an award in another form. The witness denied also that he had ever stated to any person that such an award in favor of Hartupee had been made out, but was changed to an award the other way, in consequence of the remonstrance of the witness and other persons with the arbitrator, or that there was a pool or moneyed arrangement connected with the prosecution of the city's claim.

At the close of Mr. Bigelow's testimony, the plaintiff made the following offer:

Counsel for plaintiff proposes to prove by Andrew Hartupee and others, and by papers, and documents and letters, that the plaintiff substantially complied with the contracts, already in evidence, by constructing the two pairs of engines in the manner and of the strength of iron required by the contracts, and did the work according to the contracts in all respects; that the engines have been in use, doing the work for which they were constructed, for a period of over ten years, and are now in good condition and performing their work with little if any repairs; that the award in this case, made by Joseph L. Lowry, was made up, first, by charging Mr. Hartupee for the first pair of engines with the delay of five years and four months at $100 per day, and on the second pair of engines four years and two months at $100 per day, making an aggregate of damages for the delay of $346,750; that with these damages for delay Mr. Lowry extinguished the balance due Mr. Hartupee of $305,370.16; that he extinguished it or set it off by that damage; that at the time the arbitrator did this, reached this conclusion, it was a fact and he knew it, that the delays had been occasioned by not completing the foundations for the engines until sometime in 1878, when the foundations should have been completed for the first pair on July 1, 1873, and for the second pair July 1, 1874; that another reason for the delay of Mr. Hartupee, and known to Mr. Lowry was, that he had failed to furnish the detail drawings for the work as he was required to do under the contracts, and that the detail drawings were not all furnished until May 4, 1878, and that the plaintiff was delayed up to May 4, 1878, by Lowry, the arbitrator and mechanical engineer, himself, in not furnishing the detail drawings,

Decree of Court below.

and that the drawings were furnished from time to time and at different times from the date of the contract up to May 4, 1878, and that that and the foundations not being constructed by the city was the only cause of the delay, and that Mr. Hartupee was not in fault, and the arbitrator knew this; that the arbitrator all this time was in the employ of the city at a salary of $4,000 per year; that the arbitrator further found that the material and work in the two pairs of engines was not according to the contracts and condemned them as worthless, when he knew as a mechanical engineer that the contract was complied with, that the material was of the .workmanship and tensile strength required by the contracts; that during the progress of the work, and before the year 1878, difficulties arose between Mr. Hartupee and Lowry, the engineer and arbitrator, and that Lowry became without .cause unfriendly and hostile to Mr. Hartupee, so much so that they did not speak, and would communicate by letter in the place of verbal communications.    This is offered for the purpose of showing a state of facts and circumstances from which the court should infer dishonesty and fraud on the part of the arbitrator, and set this award aside.

Objected to, as incompetent and irrelevant and not tending to show any fraud and collusion between the city of Pittsburgh and the arbitrator, which influenced the award.

By the court:  Objection sustained; exception.[2]

The plaintiff then rested.

After argument, the court, without opinion filed, entered the following decree:

Under the agreement of counsel for the several parties in interest, hereto attached, this cause came on to be heard before the court without the intervention of a master, and thereupon evidence was taken and several rulings made, as appear in the reporter's notes thereof, herewith returned and filed in court. And now, February 16, 1889, upon due consideration thereof, it appears to the court that there is no evidence sustaining the allegation of plaintiff's bill, that the " award of Joseph L. Lowry, mechanical engineer, was induced in the manner as charged therein, by fraud and collusion between said Lowry and the said city of Pittsburgh, its agents or representatives." And it is further found as a fact, that no such fraud or collu- ⌐

sion did exist between said parties as alleged, and therefore it is now ordered, adjudged and decreed that said plaintiff's bill be dismissed, at the costs of the plaintiff.

Thereupon the plaintiff took this appeal, specifying that the court erred:

1, 2. In refusing the plaintiff's offers.[1] [2]

3. In dismissing the bill and refusing to receive the evidence offered by the plaintiff.

*Mr. Charles A. Sullivan* (with him *Mr. Charles McCandless*), for the appellant:

As our offers of testimony in support of the bill were ruled out, the facts stated in the offers will be treated in this court as proven. We submit, then, that the averments of the bill, and the offers of proof, show such a state of facts and surroundings, such concert and combination between the city and Lowry, as to render irresistible the conclusion that the award was fraudulent, and that Lowry, when he made the award, in opposition to what he well knew were the facts in the case, did so as the mere servant of the city and at its behest.

*Mr. D. T. Watson* (with him *Mr. W. C. Moreland*, City Solicitor, *Mr. George Shiras, Jr., Mr. D. D. Bruce* and *Mr. James M. Shields*), for the appellees:

1. The practice of trying the preliminary question of fraud in a case like this, without going into thousands of pages of testimony on other points before it is settled, is in accordance with the recommendation of this court in Dampf's App., 106 Pa. 80, and it was agreed to on both sides in the present case. To set aside the award, it was requisite to prove that it was procured by a fraud in which the city was implicated: Hostetter v. Pittsburgh, 107 Pa. 419. No objection to the proof of this was made. The attempt to prove it by the testimony of Mr. Bigelow completely failed, and the only question here is whether the plaintiff can show that the arbitrator ought to have decided the case the other way, as a basis for inferring dishonesty and fraud.

2. The admissibility of his offers was passed on adversely in Hostetter v. Pittsburgh, 107 Pa. 419. If such attacks as this

upon the integrity of awards and judgments were permitted, there never would be an end of litigation. Fraud may be introduced, in Pennsylvania, as a defence to an action on an award, as the opinion of Stowe, P. J., in this case shows ; and the offers in Hostetter v. Pittsburgh, supra, were rejected, not because fraud would not be a defence, but because they did not tend to show collusion between the city and the arbitrator. The offers in the case at bar are the same in kind and facts, though less extensive, than those rejected in the other case. Their inadmissibility is flatly ruled by the decision of this court in that case.

Per Curiam :

This case ends a long litigation, involving a large amount of money. Andrew Hartupee, the appellant, contracted in the year 1872 with the city of Pittsburgh, to furnish two pumping engines for the city water works at a cost of $423,550, and to have the same completed and ready for service on or before November 15, 1873. A subsequent contract was made for two more engines at a cost of $375,000, to be completed on or before November 15, 1874. The engines were not finished within the time fixed ; the city alleged that the materials used were defective, and not according to specifications. Finally, the city took possession of the engines, completed them, and refused to pay the price stipulated in the agreement. Hartupee then brought an action of assumpsit against the city to recover the stipulated price agreed upon, and was defeated upon two grounds ; (a) that he had not complied with his contracts, and (b) that the matters at variance between them should have been submitted to the arbitrament of the mechanical engineer who had the control of the work on the part of the city. See Hartupee v. Pittsburgh, 97 Pa. 107. Subsequently, the case was submitted to the mechanical engineer, who made an award in favor of the city and against Hartupee. Thereupon the city brought suit on the award against David Hostetter, who was Hartupee's surety for the faithful performance of his contract, and recovered a verdict against him of $375,000, to be released on the payment of $190,200. This case will be found reported as Hostetter v. Pittsburgh, 107 Pa. 419. The present suit was a bill in equity filed by Hartupee against the city, the object of

which was, (*a*) to set aside the award, and (*b*) to recover the sum of $305,370.16, being the balance claimed by Hartupee as due him under the contracts, and for extra work and material, with costs of suit.

The case was heard below by the learned president of Common Pleas No. 1, as examiner and master, under the following agreement of counsel :

"And now, December 26, 1888, the court having on the joint application of the plaintiff and defendants consented to sit as master and examiner in this case and hear the testimony of both sides, and the preliminary question involved, now defines said preliminary question to which the testimony shall be confined, as follows : Whether the award of Joseph L. Lowry, mechanical engineer, specified in the bill, and in favor of the city of Pittsburgh, was induced in the manner as charged in the bill, by fraud and collusion, between the said Joseph L. Lowry and the city of Pittsburgh, its agents or representatives ? "

It is manifest that the settlement of this preliminary question was a prerequisite to the plaintiff being heard upon the merits of his case. The award of the mechanical engineer was a flat bar to his recovery so long as it was allowed to stand. But if the said award had been procured by fraud in which the city participated, the plaintiff had a right to have it set aside. This court so said in Hostetter v. Pittsburgh, supra, at page 435. The bill came on to be heard before the learned judge below, sitting as examiner and master, and after an exhaustive examination and consideration, the learned judge found and decreed that the allegations of fraud contained in said bill were not sustained. This is the question which now comes here upon this appeal.

There are three assignments of error; the first two complain of the rejection of evidence, while the third is merely the general one that the court erred in dismissing the plaintiff's bill. An extended discussion is not required as to either. The offers of evidence varied somewhat, but not essentially, from those made in Hostetter v. Pittsburgh, 107 Pa. 435, where this court held that they did not tend to connect the city of Pittsburgh with any fraud in the procurement of the award. The offers here, if admitted and proved, would not have connected the

city with the alleged fraud. They are substantially, as before observed, the same as were made upon the trial in Beaver county, where they were rejected, not because fraud was not a defence, but because they did not offer to show collusion between the city of Pittsburgh and the referee. We have examined this case with care, and with an anxious desire to see that no injustice has been done to the plaintiff, but we fail to find any legal reason why we should disturb the decree of the court below.

> The decree is affirmed, and the appeal dismissed at the costs of the appellant.