Allstate Insurance Company, Appellant *v.* Fioravanti.

Argued November 16, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Joseph G. Manta,* with him *James M. Marsh* and *LaBrum and Doak,* for appellant.

*Stanton Dubin,* with him *Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot,* for appellee.

OPINION BY MR. JUSTICE EAGEN, January 19, 1973:

This appeal necessitates once again our consideration of the finality which is accorded awards made by an arbitration panel.

Appellant, Allstate Insurance Company, filed a petition in the Court of Common Pleas of Philadelphia to set aside an arbitration award made in favor of appellee, Anthony Fioravanti. Appellee filed preliminary objections in the nature of a demurrer and to strike Allstate's petition. The trial judge sustained these objections, dismissed the petition and entered judgment on the award of the arbitrators. The Superior Court affirmed in a per curiam opinion and allocatur was granted to this Court.

The roots of the dispute lie in the following facts. On September 11, 1970, a three-year-old girl, daughter of Louis Fioravanti, was struck and injured by an uninsured motorist. A claim was submitted *under the uninsured motorists clause of a policy issued to Anthony Fioravanti, the grandfather of the child and the father of Louis,* which Allstate refused to pay. The policy provision calling for arbitration of such claims under rules of the American Arbitration Association was then invoked by appellee. A three-lawyer panel was selected, facts were stipulated—the lack of insur-

ance covering the tortfeasor, and the freedom from contributory negligence of the young girl—and, after a hearing, an award was announced in favor of the claimant for $3500. The sole question argued to and passed on by the arbitrators was a question of estoppel.[1]

The gravamen of Allstate's complaint is that it was denied a full and fair hearing and thus, due process of law, when the arbitrators refused its counsel's request to submit a memorandum of law on the controlling legal issue of the case.

Since this appeal is from the sustaining of preliminary objections in the nature of a demurrer, the facts before us are confined to appellant's complaint since the demurrer admits for present purposes every well pleaded material fact set forth in the complaint as well as the inferences reasonably deducible therefrom. *Eden Roc Country Club v. Mullhauser,* 416 Pa. 61, 204 A. 2d 465 (1964). In reviewing this complaint, we are mindful of the rule that preliminary objections should be sustained and a complaint dismissed only in cases which are clear and free from doubt. *Legman v. Scranton School District,* 432 Pa. 342, 247 A. 2d 566 (1968). By this we mean it must appear with certainty that, upon the facts averred, the law will not permit recovery by the plaintiff. Any doubt should be resolved by a refusal to sustain the objections. *Birl v. Philadelphia Electric Company,* 402 Pa. 297, 167 A. 2d 472 (1960).

---

[1] It was claimed that Allstate was estopped from denying coverage on the ground that the insurer had afforded coverage for an accident a number of years prior thereto in which Louis Fioravanti was driving a vehicle owned by the named insurer, Anthony Fioravanti. Allstate's rejoinder was that the son had been covered because he was driving the insured vehicle with the permission of the owner and hence was covered under the omnibus insured clause, a situation having no bearing on the present facts.

The child was not a resident of her grandfather's home at the time these events transpired, nor was her father when he had his accident.

Appellant earnestly contends that there is a clear parallel between the present case and *Smaligo v. Fireman's Fund Insurance Company,* 432 Pa. 133, 247 A. 2d 577 (1968), wherein this Court found a denial of a full and fair hearing.

The Smaligos had instituted arbitration proceedings to recover for the death of their thirty-seven-year-old daughter who was killed by a hit-and-run driver. They were awarded $243. The parents then moved to vacate the award on the ground that the arbitrator denied their request for a recess to obtain the testimony of decedent's attending physician as to certain medical matters having a bearing on the daughter's future work capacity. The lower court vacated the award and remanded the case for a hearing de novo before another arbitrator, and we affirmed. Writing for the Court, Mr. Justice [now Chief Justice] JONES said at pp. 137-138:

"Whether or not a formal motion for continuance was made is not as governing as the arbitrator seeks to make it. The important fact that stands clear is that Smaligos' counsel did proffer medical testimony which was relevant and of great import in the determination of loss of future earnings of the decedent and that the arbitrator determined such testimony was not necessary. It may be true that Smaligos' counsel should have come prepared with the medical testimony at the time of the hearing and that perhaps the necessity of such testimony came to him as an 'afterthought' (as stated by the arbitrator), but such observations cannot militate from the all-important fact that counsel did at the time of the hearing make an offer to present the medical testimony and the arbitrator viewed such testimony as 'unnecessary'.

"This was not a mere mistake of law or of fact binding upon all parties and the court. The arbitrator's failure to regard Dr. Parsons' testimony of any import

resulted in Smaligos being denied a full and fair hearing. That an award is not binding where there has been a denial of a hearing has been clearly stated by this Court on several occasions."

The analogy appellant advances is that in *Smaligo* plaintiff was denied the opportunity to present factual evidence on a crucial factual issue while here it was deprived of the opportunity to present a memorandum *on the controlling legal issue.*

We see more parabola than parallel in the two cases. The arbitrator's action in *Smaligo* led to the *complete omission* of critical factual evidence. Instantly, there was no such omission and the attempted equation fails for that reason. As hereinbefore noted, estoppel was the only controverted element in the case and appellant's counsel addressed himself to the issue in his opening argument, illustrated his position by cross-examination of appellee's witnesses,[2] remet the issue and again explicated the company's position in the closing oral argument. At most, one *form* of argument was closed off by the arbitrators, *the argument itself was not.*

It is thus our judgment that this hearing had the necessary essentials of due process, i.e., notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause. See *Wiley v. Woods,* 393 Pa. 341, 141 A. 2d 844 (1958). It is a commonplace that adjudicatory action cannot validly be taken by any tribunal, whether judicial or administrative, except upon a hearing, wherein each party shall have the opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence in his own behalf and to make argument. Unquestionably

---

[2] Allstate presented no witnesses of its own at the hearing.

these prerequisites were met by the instant proceeding and not in a perfunctory fashion. As we have stated, no evidence or argument was precluded at this hearing; what was precluded was a form or mode of argument, not its substance, which does not amount to a denial of an opportunity to defend.[3]

Having found no denial of a full and fair hearing, we now must turn to the allegation that the arbitrators' award constituted a constructive fraud.

As a preface to this discussion, we note the consistent position of this Court that "[i]f the appeal is from a common law award, appellant, to succeed, must show by clear, precise and indubitable evidence that he was denied a hearing, or that there was fraud, misconduct, corruption or some other irregularity of this nature on the part of the arbitrator which caused him to render an unjust, inequitable or unconscionable award, the arbitrator being the final judge of both law and fact, his award not being subject to disturbance for a mistake of either." *Harwitz v. Selas Corporation of America,* 406 Pa. 539, 542, 178 A. 2d 617 (1962).[4]

---

[3] The "Accident Claims Tribunal Rules" of the American Arbitration Association contain no explicit provision on the right to file briefs as a part of the proceeding. In point of fact, "briefs" are mentioned in but one section [§26] and then in a tone and setting of language which connotes discretion on the part of the arbitrator to request briefs or not, as he gauges the necessity therefor.

By way of contrast, the Administrative Agency Law contains a mandatory provision giving parties the opportunity to file briefs. See Act of June 4, 1945, P. L. 1388, §33, 71 P.S. 1710.33. Cf. also, *Bengal v. State Board of Pharmacy,* 2 Pa. Commonwealth Ct. 347, 279 A. 2d 374 (1971).

[4] This policy of limited review was best explained in *Westinghouse Air Brake Company Appeal,* 166 Pa. Superior Ct. 91, 97, 70 A. 2d 681 (1950), where the court said "a contrary holding would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally."

However, the cases and treatises are crystal clear that "[i]n order to impeach an award for fraud, the general rule is that the fraud must be actual and not constructive." 11 Standard Pennsylvania Practice, Ch. 49, §158. This same work also observes, "The statement is made in a number of cases that fraud of the arbitrators must consist of collusion with the party benefited; evidence that the arbitrator was partial and unfair and knowingly made an improper decision has been deemed insufficient, without evidence of such collusion." In *Hostetter v. City of Pittsburgh*, 107 Pa. 419, 435 (1885), it was said: "The [arbitration] award like a judgment, may undoubtedly be impeached for fraud, which avoids all judicial acts. The fraud, however, must be actual and intentional, and not constructive, such as flows from an erroneous or unjust judgment. Partiality and some improper conduct of the arbitrator in making the award will not impeach it unless the party benefited thereby be implicated in that misconduct: Braddick v. Thompson, 8 East 344." See also *Harlupee v. Pittsburgh*, 131 Pa. 535, 19 A. 507 (1890). Therefore, this second allegation is insufficient as a matter of law to set aside the challenged award.[5]

By its disposition the lower court was not vouching for the wisdom of this award, nor are we, for plainly it is bereft of that quality. But as the decisions of this Court have reiterated, mistakes of judgment and mistakes of either fact or law are among the contingencies parties assume when they submit disputes to arbitrators.

---

[5] There was, of course, no charge of corruption in this case, and properly so, nor was there any misconduct as the cases have come to define that term. For some of the kinds of activity which would qualify as "misconduct", see, *Seaboard Surety Co. v. Commonwealth*, 345 Pa. 147, 27 A. 2d 27 (1942), and *Snodgrass v. Morrison*, 8 Pa. Dist. Rep. 511, 16 Lanc. L. Rev. 158 (1899).

We decline to speculate about how the arbitrators reached the instant decision. It should be noted, however, that such a cavalier approach runs the risk of jeopardizing the use of the arbitration process, a system designed to provide an expeditious and inexpensive method of resolving disputes with the further winning attribute of helping to ease congested court calendars, by creating widespread disrepute. It is possible to hypothocate an arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result as to cause us to give content to the phrase "other irregularity" since it is the most definitionally elastic of the grounds for vacatur. While we do not feel the present case achieves that dubious distinction, we are not without power to act should such a case arise.[6]

Order affirmed.

Mr. Chief Justice JONES, Mr. Justice NIX and Mr. Justice MANDERINO concur in the result.

---

[6] It is always open to contracting parties to provide for statutory, rather than common law, arbitration where the grounds for review are much broader than is the case instantly.