462 A.2d 833

**Ronald A. CARGILL**

**v.**

**NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Appellant.**

**NORTHWESTERN NATIONAL INSURANCE COMPANY OF MILWAUKEE, WISCONSIN, Appellant,**

**v.**

**Ronald A. CARGILL.**

Superior Court of Pennsylvania.

Argued April 22, 1982.

Filed July 8, 1983.

140

Roger Joseph Harrington, Philadelphia, for appellant.

Eugene A. Spector, Philadelphia, for appellee.

Before WICKERSHAM, BROSKY and WIEAND, JJ.

WIEAND, Judge:

Ronald A. Cargill, a Pennsylvania resident employed by Minnesota Mining and Manufacturing Company, was injured in an automobile accident on January 1, 1979 in Queens, New York. The vehicle which Cargill was operating at the time of the accident was owned by his employer, Minnesota Mining and Manufacturing Company, and insured under a policy issued to the employer by Northwestern National Insurance Company of Milwaukee, Wisconsin (hereinafter "Northwestern"). The vehicle which struck Cargill's automobile from behind was operated by an uninsured motorist. Cargill submitted a claim for benefits under the uninsured motorist coverage provided by the insurance policy issued to his employer and, when the parties were unable to agree on an amount, filed a demand for arbitration. A hearing was held, after which the arbitrators, with one dissent, awarded Ronald A. Cargill the sum of $35,000.00.

Subsequently, a petition to vacate and/or modify the arbitration award was filed by Northwestern, and Cargill, in turn, petitioned for confirmation of the award. Northwestern contended that the award was excessive because it was in an amount more than twenty-five times greater than the medical expenses of $1,385.00. Northwestern alleged also and offered to prove that the arbitration had proceeded under the wrong policy of insurance, resulting in an award in excess of the coverage afforded by the correct policy. Although counsel for Northwestern offered to prove the purported mistake and was prepared to present witnesses, no evidence was in fact received. The trial court rejected

Northwestern's arguments and entered an order granting Cargill's petition to confirm the arbitration award. Judgment was entered, and this appeal followed.[1]

■ Arbitration is "designed to provide an expeditious and inexpensive method of resolving disputes with the further winning attribute of helping to ease congested court calendars...." *Allstate Insurance Co. v. Fioravanti,* 451 Pa. 108, 116, 299 A.2d 585, 589 (1973). Consequently, judicial review of an arbitration award is severely circumscribed. It must be so; otherwise, " 'arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally.' " *Allstate Insurance Co. v. Fioravanti, supra,* 451 Pa. at 114 n. 4, 299 A.2d at 589 n. 4 quoting *Westinghouse Air Brake Co. Appeal,* 166 Pa.Super. 91, 97, 70 A.2d 681, 684 (1950). See also: *Bole v. Nationwide Insurance Co.,* 238 Pa.Super. 138, 141, 352 A.2d 472, 473–474 (1975), vacated on other grounds, 475 Pa. 187, 379 A.2d 1346 (1977).

"In order to determine whether an arbitration is one at common law or under the Arbitration Act, we examine the language in the contract and the procedure followed during the arbitration." *Wingate Construction Co. v. Schweizer Dipple, Inc.,* 419 Pa. 74, 77, 213 A.2d 275, 276–277 (1965). See also: *Runewicz v. Keystone Insurance Co.,* 476 Pa. 456, 460–461, 383 A.2d 189, 191 (1978). The language of the insurance policy submitted to the arbitrators in the case *sub judice* provided for arbitration according to, and the arbitrators in fact proceeded pursuant to, rules of the American Arbitration Association, which is to say, at common law. Compare: *General Accident Fire and Life Assurance Corp. Ltd. v. Flamini,* 299 Pa.Super. 312, 315, 445 A.2d 770, 772 (1982).

1. Northwestern's appeals from the granting of Cargill's petition to confirm and from the denial of its own petition to vacate or modify were consolidated for purposes of appeal.

"The decision of the arbitrator in a common-law arbitration is binding and cannot be attacked unless it can be shown by clear, precise and indubitable evidence that a party was denied a hearing, or that there was fraud, misconduct, corruption or other irregularity which caused the rendition of an unjust, inequitable or unconscionable award." *Smith v. Employer's Liability Assurance Corp., Ltd.*, 217 Pa.Super. 31, 33–34, 268 A.2d 200, 201 (1970) (collecting cases). See also: *Nationwide Mutual Insurance Co. v. Barbera*, 443 Pa. 93, 95, 277 A.2d 821, 823 (1971); *Friedman v. Friedman*, 277 Pa.Super. 428, 431, 419 A.2d 1221, 1223 (1980); *Reinhart v. State Automobile Insurance Co.*, 242 Pa.Super. 18, 23, 363 A.2d 1138, 1140 (1976); *Owens v. Concord Mutual Insurance Co.*, 210 Pa.Super. 235, 239, 232 A.2d 14, 16 (1967). The arbitrators are the final judges of both law and fact, their award not being subject to reversal for a mistake of either. *Runewicz v. Keystone Insurance Co.*, 476 Pa. 456, 461, 383 A.2d 189, 191–192 (1978); *Allstate Insurance Co. v. Fioravanti, supra*, 451 Pa. at 114, 299 A.2d at 588; *Harwitz v. Selas Corp. of America*, 406 Pa. 539, 542, 178 A.2d 617, 619 (1962); *Mellon v. Travelers Insurance Co.*, 267 Pa.Super. 191, 195, 406 A.2d 759, 761 (1979).[2]

■ In view of the conclusiveness which is accorded the arbitrators' award, Northwestern's contention that the award should be set aside merely because of excessiveness is lacking in merit and must be dismissed. Northwestern's reliance on language in *Allstate Insurance Co. v. Fioravanti, supra*, 451 Pa. at 116, 299 A.2d at 589, which

2. The scope of review accorded a statutory arbitration, while by no means broad, is nonetheless less restrictive than that applicable to common law arbitration. "[T]he lower court's scope of review under the Arbitration Act is the same as that upon a petition for judgment notwithstanding the verdict of a jury, and thus the court is empowered to correct the award for a mistake of law." *Young v. United States Fidelity and Guaranty Co.*, 299 Pa.Super. 237, 239, 445 A.2d 542, 543 (1982). See: Act of April 25, 1927, P.L. 381, No. 238, § 1 et seq., as amended, 5 P.S. § 161 et seq. (repealed by Act of October 5, 1980, P.L. 693, No. 142, § 501(c)) (current version at 42 Pa.C.S. § 7301 et seq.). See also: *State Farm Mutual Automobile Insurance Co. v. Williams*, 481 Pa. 130, 134–136, 392 A.2d 281, 283 (1978).

recognizes the possibility of "an arbitration award which imports such bad faith, ignorance of the law and indifference to the justice of the result as to ... give content to the phrase 'other irregularity' " is also unavailing. The type of irregularity acknowledged by *Fioravanti* goes beyond the amount of the award and suggests an unconscionable injustice. Merely characterizing an arbitration award as "excessive" is insufficient to justify setting aside the award.

■ Similarly, we are unpersuaded by Northwestern's contention that the award should be set aside because arbitration proceeded under the wrong policy of insurance and the award exceeded the correct policy's limit of liability. Although no testimony in support of this contention was received, the facts which Northwestern intended to show were contained in an offer of proof and can be summarized briefly. Following the automobile accident in which Cargill sustained injury, he notified the employer's insurance carrier of his claim. A claims adjuster completed an "Accident or Loss Notice" which identified the applicable insurance policy as Number CLA 783715, issued to Minnesota Mining and Manufacturing Company. This policy contained a limit of liability in the amount of $15,000.00 for the vehicle which appellee had been driving. Several months later, Cargill submitted a claim for benefits to Northwestern. This form also bore Policy Number CLA 783715 and specified Minnesota Mining and Manufacturing Company as the employer-policyholder. In order to ascertain the terms of the coverage, Cargill's counsel contacted Northwestern's claims adjuster and requested a copy of the Minnesota Mining and Manufacturing insurance policy, Number CLA 783715. In response thereto, a copy of the cover sheet and a document explaining the uninsured motorist coverage for Policy Number CLA 783715(D) was forwarded to counsel by Michael C. Munson, Casualty Supervisor for Northwestern's adjuster. The cover sheet identified the 3–M Club of St. Paul as the policyholder and recited coverage of $100,000.00. Upon receipt of these documents, a demand for arbitration under Policy Number CLA 783715(D), issued to the 3–M Club of

St. Paul, was served upon Northwestern. Arbitrators were appointed, a hearing was held, the cover sheet for Policy Number CLA 783715(D) was introduced into evidence, and an award of $35,000.00 was rendered. Northwestern did not discover the submission of an incorrect policy until after the award had been entered.[3]

Appellant contends that the policy referred to by the parties and pursuant to which the arbitration proceeded, misled the arbitrators regarding the coverage applicable to the controversy. Its argument can be analogized to a request for a new trial on the basis of after discovered evidence. "After discovered evidence is not grounds for a new trial unless it is established that the evidence could not have been obtained at trial by reasonable diligence." *Frank B. Bozzo, Inc. v. Electric Weld Division of the Fort Pitt Bridge Division of Spang Industries, Inc.*, 283 Pa.Super. 35, 48, 423 A.2d 702, 708 (1980), *aff'd*, 495 Pa. 617, 435 A.2d 176 (1981). "To justify the grant of a new trial on the grounds of after discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility and must be such as would likely compel a different result." *Townsend Will*, 436 Pa. 185, 190, 258 A.2d 518, 520 (1969); *Freed v. Priore*, 247 Pa.Super. 418, 424, 372 A.2d 895, 899 (1977). "Courts will not aid parties where they have failed to take the requisite steps to procure their evidence . . . ." *Limper v. Philadelphia Electric Co.*, 297 Pa. 204, 210, 146 A. 574, 576 (1929).

Appellant concedes that the introduction of an incorrect policy resulted from its own error. The correct policy of insurance was at all times available to it and, in the exercise of due diligence, could have been presented to the arbitrators before the proceedings were concluded and an award entered. Under these circumstances, the trial court correct-

**3.** Appellant contends that the mistake regarding the policy was mutual. There was no offer to prove that appellee or his counsel knew of the error and proceeded to arbitration without disclosing the same.

ly refused to set aside the award because appellant had offered in evidence an incorrect policy of insurance.[4]

The arbitrators' award was neither fraudulent nor irregular; it was based upon the evidence placed before the arbitrators by the parties. The judgment entered on their award, therefore, will be affirmed.

Judgment affirmed.

4. We do not consider appellee's argument that the policy issued to Minnesota Mining and Manufacturing was a "fleet" policy and that the arbitrators, by "stacking" coverages on the vehicles insured, would probably have reached the same result under the terms and provisions of that policy.