J-A29039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| CHURCHILL COMMUNITY DEVELOPMENT, L.P. AND PARADIGM CONSULTANTS, LLC | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : | |
| | : | No. 58 WDA 2022 |
| CHURCHILL CROSSINGS, LLC AND CHURCHILL CROSSINGS PARTNERS, L.P. | : : : : | |

Appeal from the Order Entered December 15, 2021,
in the Court of Common Pleas of Allegheny County,
Civil Division at No(s):  G.D. 21-001097.

BEFORE:  BENDER, P.J.E., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED:  June 9, 2023**

Churchill Community Development, L.P., *et al.* ("Seller") appeals from the order denying its motion to vacate an arbitration award entered in favor of Churchill Crossings LLC ("Buyer 1") and Churchill Crossings Partners, L.P. ("Buyer 2") in this breach of contract case.   Upon review, we affirm.

On May 17, 2012, Seller[1] acquired the George Westinghouse Research Park, consisting of approximately 135 acres and improvements, located in Churchill Borough, Allegheny County, Pennsylvania ("Property").   While attempting to develop the Property, Seller ran afoul of various environmental laws.

---

[1] The principals of Seller are Vikas Jain and Ramesh Jain.

As a result, in 2017, Seller asked a real estate group, NAI Pittsburgh to manage and remediate the property. The owners of NAI Pittsburgh, Charles DiLoreto and Nicole Deluca, eventually formed a separate company, Buyer 1, to handle all issues related to the Property. As problems continued, Seller talked with Buyer 1 about acquiring the Property.

In March 2018, Seller and Buyer 1 entered into an Agreement of Sale ("Agreement")[2] for the sale of the Property. Seller and Buyer 1 also executed an Addendum[3] to the Agreement. In relevant part it provided:

> Any time within 2 1/2 years from the date of the closing on the Property, Seller or the current officers or directors of Seller, shall have the right to acquire ninety-two (92%) percent of the membership units of [Buyer 1], provided that Seller pays to the members of [Buyer 1], any and all current debt and the purchase price that [Buyer 1] has incurred and used in the Sale, Leasing, Development, Management, or Maintenance of the Property ("Option").

Arbitration Ex. 4, ¶ 6.[4]

The owners of Buyer 1, along with another individual, formed another entity, Buyer 2. Subsequently, the Agreement was amended several times. Notably, one of the amendments, dated July 23, 2018, which addressed various terms regarding the Property's closing, indicated that it was entered

---

[2] Buyer 1 and Buyer 2 refer to this as the "Initial" Agreement of Sale.

[3] According to Buyer 1 and Buyer 2, Seller hoped to become reinvolved in the Property at some point in the future which was the purpose of this document.

[4] "Membership units" are interests issued to a person or entity that makes a capital contribution to an LLC.

into between Seller and Buyer 2. It was signed by Seller and Buyer 2 but not Buyer 1. Thereafter, none of the documents involved Buyer 1.

On August 14, 2018, Seller and Buyer 2 closed on the Property. Buyer 2 executed a note and mortgage for the Property and another amendment to the Agreement.[5] Subsequently, the Property was transferred to Buyer 2 by special warranty deed, effective November 2, 2018.

In July of 2019, Buyer 2 executed a document for the potential sale of the Property to another developer who planned to develop it as a large-scale fulfillment site for Amazon.

On December 4, 2020, Seller sent a letter to Buyer 2 indicating its intent to exercise the Option in the Addendum. In response, Buyer 2 stated it would not honor the Option. It set forth two reasons for refusing to do so: 1) the Option had been terminated,[6] and 2) the Agreement and its Addendum only pertained to Buyer 1, not Buyer 2. Buyer 2 noted that an amendment to the Agreement identified Buyer 2 as the buyer, and because the Agreement with the Option was never exercised, Seller had no right to acquire any interest in Buyer 1.

---

[5] It appears that Buyer 1 and Buyer 2 refer to this as the "Final" Agreement of Sale although it is titled "Amendment."

[6] This reason for refusal appears to be based, in part, on a handwritten document that DiLoreto asked Seller to execute confirming that Seller had no ownership interest in the Property prior to DiLoreto's testimony in federal court on a separate action involving the environmental issues at the property. We glean this information from Buyer 1 and Buyer 2's emergency motion and proposed findings of fact and conclusions of law submitted for the arbitration and is used solely for information purposes.

As a result of Buyer 2's refusal to honor the Option, Seller filed a *lis pendens* against the Property by filing a praecipe for writ of summons involving real estate. Buyer 1 and Buyer 2 sought to strike the *lis pendens* and filed an emergency motion. No complaint was filed in the civil action, but the parties agreed to arbitrate their dispute, in accordance with 72 Pa.C.S.A. section 7341, Common law arbitration. To accommodate a sale of the Property, the trial court temporarily lifted the *lis pendens* pending the outcome of the arbitration.

At the outset of the arbitration, the chief arbitrator stated, "I perceive this to be like any other type of court proceeding and it's going to be up to the parties to present their cases." N.T., 7/14/21, at 3. Seller proceeded to present its case. Notably, Seller only introduced various documents pertaining to the transaction; it presented no witnesses to explain anything or testify about the documents or transaction. Seller then rested.

Before presenting any evidence, Buyer 1 and Buyer 2 moved for a "directed verdict"[7] and argued: "[Seller] has not submitted evidence of a valid option, excuse me, there is no evidence they exercised the option." They further argued: "There is no evidence either that the exercise of the option was prevented by [Buyer 1 or Buyer 2]. There's no proof of a breach, there's no damages or proof of damages that have been submitted to the [c]ourt . .

---

[7] Although this was termed a "directed verdict," it was treated as a motion to dismiss or nonsuit.

- 4 -

. . The Addendum speaks only of an interest in [Buyer 1], not in the ownership . . . in [Buyer 2]." *Id.* at 24-25.

Following argument from both sides and deliberation by the panel, a majority of the arbitrators announced to the parties that they found that the documents submitted by Seller were ambiguous, and Seller failed to explain or clarify those ambiguities by presenting any evidence or testimony. Consequently, the majority concluded that Seller did not establish any of the rights it claimed under the Option.

In response, Seller argued:

> Except that we're on a motion to dismiss, and you were acting as a court. On a motion to dismiss every part of the document was to be construed in our client's favor. So if you found an ambiguity, that ambiguity on a motion to dismiss is always construed in favor of the party who had presented. So you're doing the opposite of what case law requires.

*Id.* at 62. The chief arbitrator disagreed, and the proceedings concluded.

Subsequently, a majority of the arbitrators issued a written award granting Buyer 1 and Buyer 2's motion for "directed verdict." Specifically, the majority permanently struck the *lis pendens* and concluded that Seller failed to prove the existence of and its exercise of the Option.

Thereafter, Seller filed a motion to vacate the arbitration award with the trial court; Buyer 1 and Buyer 2 filed a motion to confirm the award. Upon review, the trial court concluded that Seller failed to assert any irregularity in the arbitration proceedings. Consequently, the court denied Seller's motion and confirmed the arbitration award in favor of Buyer 1 and Buyer 2.

Seller filed this timely appeal.

On appeal, Seller raises the following issues:

1. Whether an appropriate standard of review was applied when reviewing a non-unanimous arbitration award where the arbitration record and written decision of the majority arbitrators reflects that the arbitrators did not honor or observe the procedural process the [panel] established?

2. Whether an inappropriate standard of review was applied when reviewing a non-unanimous arbitration award where the arbitration record and the written decision of the majority arbitrators reflected ignorance of procedural and contract law; a record existed of the arbitration proceeding; and the decision rested on misreading of documents which documents were undisputed and consented to as authentic and admissible?

3. Whether the [c]ourt erred in finding that the arbitration proceeding had the necessary essentials of due process when the majority arbitrators determined issues that had not been raised by the other side and otherwise misconstrued uncontested documentary evidence as if there had been testimony from the [Buyer 1 and Buyer 2] thereby denying [Seller] the necessary essential of due process, *i.e.*, notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the arbitration.

4. Whether the [c]ourt erred in failing to find that the arbitration and the majority's arbitration award imported such bad faith, ignorance of the law and indifference to the justice of the result as to constitute an "other irregularity" leading to an unjust, inequitable, or unconscionable award requiring a vacation of the award.

Seller's Brief at 2-4.

Judicial review of a common law arbitration award is very narrow. It is prescribed by statute, under a provision of the Pennsylvania Judicial Code:

**§ 7341. Common law arbitration**

> The award of an arbitrator in a nonjudicial arbitration ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption *or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.*

42 Pa.C.S.A. § 7341 (emphasis added). Arbitrators are the final judges of law and fact and their award will not be disturbed for mistakes of either. *Vogt v. Liberty Mut. Fire Ins. Co.*, 900 A.2d 912, 919 (Pa. Super. 2006) (quotations and citations omitted) (emphasis added). This Court has stated:

> [A]n appellant bears the burden to establish both the underlying irregularity and the resulting inequity by "clear, precise and indubitable evidence." In this context, *irregularity refers to the process employed in reaching the result of the arbitration, not the result itself*. A cognizable irregularity may appear in the conduct of either the arbitrators or the parties. Our Supreme Court has stated that the phrase "other irregularity" in the process employed imports such bad faith, ignorance of the law and indifference to the justice of the result as would cause a court to vacate an arbitration award.

*F.J. Busse Co. v. Zipporah, L.P.*, 879 A.2d 809, 811 (Pa. Super. 2005) (some quotations omitted) (emphasis added). Neither this Court nor the trial court may "retry the issues addressed in the arbitration proceeding or review the tribunal's disposition of the merits of the case." *D'Amelia v. Toll Bros.*, 235 A.3d 321, 325 (Pa. Super. 2020). On appeal, we review a trial court's order confirming a common law arbitration award for an abuse of discretion or an error of law. *Andrew v. CUNA Brokerage Services, Inc.*, 976 A.2d 496, 500 (Pa. Super. 2009) (internal citations and quotation marks omitted).

Although framed in multiple issues and arguments, Seller's challenge on appeal is that the trial court erred when it concluded that there were no irregularities in the arbitration proceedings. To the contrary, Seller claims that the arbitration majority engaged in an irregular process when it conducted the arbitration, thereby denying its right to due process, and further, that the majority misapplied relevant contract law when it decided the case. According to Seller, these irregularities led to an unjust, inequitable, and unconscionable result and required the trial court to vacate the award.

In its first and second issues, Seller argues there were several procedural irregularities which occurred at the arbitration. It sets forth three main reasons in support of its position.

First, Seller claims the panel failed to follow its own established procedure that it would treat the arbitration as "any other court proceeding." Specifically, Seller argues that it made out a *prima facie* case; the burden then shifted to Buyer 1 and Buyer 2 to defend against it. According to Seller, Buyer 1 and Buyer 2 should have claimed that the documents were ambiguous and put on evidence to prove this but did not. Seller further argues that, in deciding the motion for a "directed verdict" and determining there was an ambiguity, the arbitrators failed to give it the benefit of the doubt as the non-moving party and instead, construed the ambiguity against it. As such, Seller maintains that the majority disregarded the "court proceeding" procedure it established. Seller's Brief at 25-26.

Next, Seller claims that the majority erred in not considering the parties' course of performance to establish their intent and resolve any ambiguity. In particular, Seller argues that the subsequent execution of various documents established a course of performance showing that the parties intended to substitute Buyer 2 for Buyer 1 but keep Seller's right to exercise the Option under the Addendum as it did. *Id.* at 31-32.

Lastly, Seller claims that the majority improperly considered whether any payment had been made. According to Seller, that issue should not have been raised at that point in the proceedings. Rather, Seller maintains that the lack of payment was an affirmative defense which Buyer 1 and Buyer 2 needed to assert and prove. Seller further maintains that because Buyer 2 rejected the Option, payment was not required; the Addendum provided that the ownership interest was to be transferred "without objection or demand for money." *Id.* at 33-36.

In confirming the arbitration award, the trial court concluded that Seller's claims were all matters of law. The court found no glaring improprieties, violations of due process or bad faith or indifference to justice on the part of the arbitrators. As such, it could not reverse the award on those grounds. Trial Court Opinion, 12/15/21, at 3, 5.

Upon review, we observe that Seller repeatedly states that the arbitrators did not follow the established procedure and couches its claims in terms of procedural irregularities that warrant vacating the arbitration award.

However, Seller's claims actually are allegations that the majority committed various errors of law, which the trial court astutely observed. *Id.*

In general, interpretation of a contract is a matter of law. *Integrated Project Servs. v. HMS Interiors, Inc.*, 931 A.2d 724, 732 (Pa. Super. 2007). Likewise, the determination of whether a contract is ambiguous is a question of law to be decided by the court. *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385 (Pa. 1986). Thus, Seller's assertion that the manner in which the panel analyzed the documents and its conclusion that the documents were ambiguous were procedural errors is erroneous; rather they are errors of law, if at all.[8]

Further, as the trial court observed, "the arbitrators could have interpreted the agreement for themselves as factfinder, or they could have requested additional parole evidence despite [Seller's] claim that they had rested." Trial Court Opinion, 12/15/21, at 3. The "failure of the majority to choose those alternatives would be an *error of law*." *Id.*

Seller is correct that the parties' course of performance after the execution of a contract is relevant when interpreting a contract. *See Atlantic Richfield Co. v. Razumic*, 390 A.2d 736, 741, n. 6 (Pa. 1978). However, any failure to apply this principle likewise constitutes an error of law.

Additionally, as the trial court stated, "the arbitrators were within their discretion to interpret the contract to find that a payment was due [to exercise

_____

[8] We note that we do not render any opinion regarding the propriety of Seller's claims.

the option] and that plaintiff had not submitted evidence on this point to meet their burden of proof." Again, interpretation of a contract is a matter of law.

Lastly, Seller's assertion that the panel failed to apply the correct standard in granting Buyer 1 and Buyer 2's motion for a "directed verdict" is also an allegation that the panel committed an error of law.

None of Seller's claims constitutes an irregularity in the arbitration proceeding that would warrant a court to set aside the arbitration award. Instead, our caselaw indicates that the only claims which may warrant vacating an arbitration award are procedural issues which sound in due process.

> Arbitration, while not surrounded by the technical procedural safeguards incident to litigation, is not a wholly informal process and requires for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy. These minimum standards require that both parties are provided with notice, all the arbitrators must sit at the hearing, each side is entitled to be heard and to be present when the other party's evidence is being given . . . . Once a dispute has been submitted to arbitration, the parties are entitled to a hearing with the necessary essentials of due process, *i.e.*, notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause . . . . [T]he basic principles of hearing conduct must be adhered to, with the arbitration process requiring for its validity the observance of certain minimum standards indispensable to the securing of a fair and impartial disposition of the merits of a controversy, i.e., a full hearing with the opportunity to be heard and to present evidence.
>
> ***
>
> [A]djudicatory action cannot validly be taken by any tribunal, whether judicial or administrative, except upon a hearing, wherein

- 11 -

each party shall have the opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence in his own behalf and to make argument. Therefore, where a matter is submitted to arbitration, arbitrators are obliged to abide by the minimal procedural requirements necessary for common law arbitration which entails granting the parties a full and fair hearing.

*Andrew*, 976 A.2d at 501–02 (citations and quotations omitted). "[T]he right to a fair hearing comprises the right to notice and the right to an opportunity to be heard." *McKenna v. Sosso*, 745 A.2d 1, 4 (Pa. Super. 1999) (citation omitted).

In *Andrew*, the arbitration panel granted CUNA's motion to dismiss based upon the statute of limitations without hearing any testimony. The trial court confirmed the arbitrators' decision, concluding that Andrew responded to the motion, participated in a lengthy telephone conference, argued his opposition, and submitted a lengthy written response. This Court reversed. We held that because Andrew raised the discovery rule, the arbitrators should have considered material evidence and testimony about when the cause of action arose. Failure to consider this evidence constituted the denial of a full and fair hearing. *Id.* at 502-503.

In reaching that decision, this Court considered *Smaligo v. Fireman's Fund Ins. Co.*, 247 A.2d 577 (Pa. 1968). There, counsel for plaintiff requested additional time to present expert testimony regarding the decedent's future earning ability and capacity, but the arbitrators deemed said testimony "unnecessary." Upon review, our High Court stated that the

arbitrators' refusal to hear this testimony "was not a mere mistake of law or of fact binding upon all parties and the court." *Id.* at 580. Instead, the Court noted that the arbitrator's failure to consider the expert's testimony resulted in the Smaligos being denied a full and fair hearing. *Id.* This Court has stated several times that an award is not binding where there has been a denial of a hearing. "Though the arbitrator's conduct in this case may not have constituted fraud, misconduct, corruption or some other irregularity 'of this nature', . . . it was conduct which amounted to a denial of a full and fair hearing of Smaligos' cause of action." *Id.* at 579.

Conversely, in *Allstate Ins. Co. v. Fioravanti*, 299 A.2d 585 (Pa. 1973), our Supreme Court considered a request to set aside an arbitration award where the application of *Smaligo* where counsel was not permitted to present a memorandum on a controlling legal issue, but had the opportunity to argue the issue before the arbitrators. The Court distinguished *Smaglio* noting that while the arbitrator's decision in *Smaligo* led to the "complete omission of critical factual evidence," the appellant in the instant case had, "at most, one [f]orm of argument ... closed off by the arbitrators." *Id.* at 588. Because the arbitrator did not preclude all argument on the issue, the *Fioravanti* Court "found no denial of a full and fair hearing." *Id.* The High Court did not vacate the award even though it found that the arbitrators were very cavalier in handling the case and the decision lacked wisdom. *Id.* at 589.

Here, as in *Fioravanti*, Seller had the opportunity for a full and fair hearing with the opportunity to be heard. It had notice of the hearing and

was in attendance. Unlike the parties in **_Andrew_** and **_Smaglio_**, Seller had the opportunity to present evidence in support of its case but chose to rest its case solely on the admitted documents. Seller chose not to present any other evidence or have any witnesses testify; the arbitrators did not prevent Seller from doing so. Seller extensively argued its position to the panel. Its strategy, however, yielded an unsuccessful result, which was subject to very limited review.[9] Although Seller attempts to argue a due process violation because the panel granted a non-suit, we view this as a substantive rather than procedural defect, if any, because it was a ruling on the merits of Seller's claim. As the trial court correctly held, "the alleged failure to 'honor or observe the very procedural process they established'" was not a valid basis to overturn the decision. No relief is due on Seller's first two issues.

In its third and fourth issues, Seller claims that the majority displayed such an ignorance of the law as to constitute an irregularity. According to Seller, "the arbitrators mangled most of the substantive law of contracts." Seller's Brief at 40. Seller argues:

> If [Buyer 1 and Buyer 2] had defenses, then [they] should have been put to the task of presenting them versus the arbitrators not only making the case for them but also writing a cavalier account of contract law to justify their decision and denying the [Seller]

---

[9] Notably, the parties could have elected to proceed with statutory arbitration, rather than common law arbitration, where the grounds for review are much broader. The parties here, however, chose to proceed with common law arbitration where the standard of review is much narrower.

due process. Nothing was fair or procedurally proper about ending the matter abruptly without first requiring [Buyer 1 and Buyer 2] from meeting their defense burdens and then permitting [Seller] to respond.

\*\*\*

[T]he arbitration was supposedly to operate as a "court proceeding", which position gave [Seller] notice of how they could proceed, but then [Seller] was denied their rights as two arbitration members decided to act differently, never informing the parties that the court proceeding standard would not be followed until conclusory analysis was proffered after the fact. This failure of acting as represented was a denial of fundamental due process . . . .

***Id.*** at 41, 44.

Seller's arguments essentially rehash what has been addressed already.

As discussed above, Seller was given the opportunity for a full and fair hearing.

Furthermore, the trial court found:

[T]he arbitration panel served diligently and in good faith. Its members reviewed the documents submitted by [Seller] and presided at an extensive hearing with counsel for both parties, the transcript of which exceeds sixty pages. That transcript, as well as the opinions issued by the panel's majority and dissenting members, show that the arbitrators grasped the arguments offered by both sides. At base, their dueling opinions reflect a good-faith difference of opinion as to whether [Seller's] documentary evidence was ambiguous on its face.

Trial Court Opinion, 5/19/22, at 3. Although a court has the ability to set aside a common law arbitration award where there is such an ignorance of the law, we conclude the trial court did not err or abuse its discretion in refusing to do so in this case.

- 15 -

Seller essentially asked the trial court and this Court to re-examine factual and legal determinations reached by the arbitration panel, which we are not permitted to do when reviewing a common law arbitration award. Mistakes of judgment and mistakes of either fact or law are among the contingencies parties assume when they submit disputes to arbitrators. *Fiorvanti*, 299 A.2d at 589. We therefore affirm the trial court's order which denied Seller's request to vacate the arbitration award.

Having concluded that Seller's appeal is without merit, we now address Buyer 1 and Buyer 2's request for attorneys' fees and costs. In support of this request, the Buyers contend that Seller's appeal is completely frivolous and is dilatory, obdurate, and vexatious. Buyer 1 and Buyer 2's Brief at 43.

Pennsylvania Rule of Appellate Procedure 2744 empowers an appellate court to grant reasonable attorneys' fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." Pa.R.A.P. 2744. "In determining the propriety of such an award, we are ever guided by the principle that an appeal is not frivolous simply because it lacks merit[;] [r]ather, it must be found that the appeal has no basis in law or fact." *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 878 (Pa. Super. 2006) (imposing sanctions pursuant to Pa.R.A.P. 2744 based upon a *pro se* appellant's undeveloped arguments on appeal and "total inability to produce any evidence that fraud or misconduct resulted in the denial of a hearing or caused an inequitable [arbitration] award").

Based upon our review of the issues and record, we decline to grant the Buyers' request for attorney's fees in this matter. We do not find that Seller unreasonably extended these proceedings or appealed in bad faith given the complexity and significance of the transaction involved.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/9/2023