J-A29024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JUDY TORMA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PARROT CONSTRUCTION CORP.; PAUL CHAMBERS | |
| Appellees | No. 363 WDA 2016 |

Appeal from the Judgment Entered March 28, 2016
In the Court of Common Pleas of Allegheny County
Civil Division at No(s): GD 15-017669

BEFORE:  DUBOW, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY MOULTON, J.: **FILED JANUARY 11, 2017**

Judy Torma appeals from the March 28, 2016 order of the Allegheny County Court of Common Pleas confirming the arbitration award entered in favor of Parrot Construction Corporation ("Parrot") and Paul Chambers and entering judgment in favor of Parrot and Chambers and against Torma.  We affirm that part of the trial court's order denying Torma's petition to modify or vacate the arbitration award with respect to Torma's allegations of procedural errors by the arbitrator.  However, because the arbitrability of one aspect of the dispute is not clear from the terms of the relevant contracts, we remand for an appropriate evidentiary hearing.

On May 15, 2014, Torma and Parrot entered into a construction contract ("Construction Contract"), wherein Parrot agreed to renovate the front wall and middle of the roof of a building owned by Torma.  The parties

used a form contract produced by the Associated General Contractors of America, which included an arbitration clause:

> 16.1 All claims, disputes, and other matters in question arising out of, or relating to, this Agreement or the breach thereof, Except [for certain artistic matters], and except for claims which have been waived by the making or acceptance of Final Payment shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually Agree otherwise. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law.

Constr. Contract, 5/15/14 at 14.

On June 6, 2014, the parties executed an Agreement of Understanding ("Moving Contract"), wherein Parrot agreed to photograph, inventory, transport, store, and sell a number of arcade and coin-operated machines owned by Torma, located on the first and second floors of the building. Torma agreed to pay Parrot for transportation costs and other fees, as well as a fee for consummating any sales of the machines. The Moving Contract did not explicitly reference the Construction Contract, but stated that the parties agreed that the Moving Contract was a "fair and equitable way to protect and recover costs associated with handling and selling the machines and equipment during the construction repairs to the property." Moving Contract, 6/6/14, at 1.

On March 27, 2015, Parrot filed an arbitration claim with the American Arbitration Association ("AAA"), demanding payment for its work under both the Construction and Moving Contracts. Parrot alleged that the Moving

Contract was a change order and, thus, an integrated part of the Construction Contract.[1] Torma filed an answer and counterclaim, arguing that: Parrot failed to comply with the terms of the Construction Contract; Parrot overbilled Torma and added false charges; the minimal work Parrot performed was of poor quality; Parrot used non-professional workers; and the Moving Contract was separate and distinct from the Construction Contract. Subsequently, the parties agreed on an arbitrator, and a hearing was scheduled for August 22, 2015.

On July 28, 2015, Torma's counsel contacted the AAA, requesting that the arbitrator view the building and issue an order dismissing Parrot's counterclaim for failure to pay the arbitration fee when due. On August 17, 2015, the arbitrator issued an order stating that he would not rule on the property viewing until the hearing and directing Parrot to pay its required arbitration fee of $1,250.00 before August 19, 2015 or its arbitration claims

_____

[1] "Change orders" are defined in Article 9.1.1 of the Construction Contract as:

> a written order to [Parrot] signed by [Torma] or his authorized agent and issued after the execution of the [Construction Contract], authorizing a Change in the Project and/or an adjustment in the Guaranteed Maximum Price, the Contractor's Fee or the Contract Time Schedule.

Constr. Contract at 7. Article 9.1 gave Torma authority to order changes "without invalidating the [Construction Contract]" so long as they were "within the general scope of [the] [Construction Contract]" and consisted of "additions, deletions, or other revisions." *Id.*

- 3 -

would be dismissed.  Parrot paid the AAA $900.00 on August 20, 2015, and the arbitrator confirmed that the hearing would proceed as scheduled.

The arbitration hearing occurred on August 22, 2015.  No record was kept.  According to Torma's petition to modify or vacate the arbitration award, she objected to the arbitrator considering the Moving Contract, arguing that the AAA lacked jurisdiction over this claim.  The parties agree that the arbitrator chose to hear all evidence related to the Construction and Moving Contracts before issuing a decision on whether he had jurisdiction.  Torma's petition also alleged that the arbitrator precluded her counsel from cross-examining Chambers, Parrot's president, about the terms of both contracts, instead stating that he would interpret the contracts.  Further, the petition averred that the arbitrator agreed to view the property but declined to examine the roof and parapet walls.

On August 26, 2015, the arbitrator issued a written order stating that the AAA had jurisdiction to hear the Moving Contract claim.  The arbitrator explained that he had the authority to determine the AAA's jurisdiction under Rule 9(a)—"Jurisdiction" and sustained Parrot's "claim . . . that moving and storage and returning of the equipment was necessary to the performance of the work [and] was essential to the contract at issue."  Arb.'s Order, 8/26/15.  Despite the fact that the Moving Contract did not specify a change in project or price, the arbitrator found that "this matter is a change order under the existing contract between the parties." *Id.*

- 4 -

On September 3, 2015, the arbitrator issued a written decision, awarding Parrot and Chambers damages for the balance due on the Construction Contract, including the work performed on the rear parapet wall and electric system, regular and penalty interest, and attorneys' fees. Arb. Award, 9/3/15. The arbitrator also awarded an equitable adjustment based on Torma's breach of the Moving Contract. *Id.*

On October 5, 2015, Torma filed a petition to modify or vacate the arbitration award. Torma alleged irregularities in the arbitration process, including: Parrot's failure to pay the arbitration fee in full before the hearing; the arbitrator's determination that the AAA had jurisdiction over the Moving Contract; the arbitrator's decision to end cross-examination of Chambers; and the arbitrator's decision to not examine the roof and walls of the building. After Parrot responded, the trial court held a hearing on the petition on December 1, 2015. On February 12, 2016, the trial court denied the petition. *See* Order & Memorandum in Support of Order, 2/12/16, at 1 ("Mem.").

On March 8, 2016, Torma filed a notice of appeal. On March 12, 2016, the trial court ordered Torma to file a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925 ("Rule 1925"). On March 28, 2016, Parrot filed a motion to confirm the award and enter judgment, which the trial court granted that

same day.[2]  Torma subsequently filed her concise statement on April 11,

2016.  On June 3, 2016, the trial court filed an opinion pursuant to Rule

1925(a).[3]  *See* Opinion, 6/3/16 ("1925(a) Op.").

_____

[2] In its order, the trial court noted that the motion was unopposed.

[3] While the Honorable Judith L.A. Friedman ruled on the petition to modify or vacate and authored the February 12, 2016 order and memorandum, the Honorable Timothy O'Reilly entered the Rule 1925(a) opinion on Judge Friedman's behalf.

In its Rule 1925(a) opinion, the trial court asked this Court to quash the appeal.  1925(a) Op. at 1.  The trial court stated that because Torma appealed from the order denying her petition to modify or vacate the arbitration award rather than the judgment entered on the arbitration award and the time to appeal from the judgment has passed, Torma's appeal is patently untimely.  *Id.* at 1-2.  We disagree.

While the trial court is correct that an order denying a petition to modify or vacate is not an appealable order pursuant to 42 Pa.C.S. § 7320, we have held that an appeal lies from an order confirming an arbitration award, which should be entered "either simultaneously with or following the entry of the order denying the petition to vacate or modify."  *Kemether v. Aetna Life & Cas. Co.*, 656 A.2d 125, 126-27 (Pa.Super. 1995).  In *Kemether*, the trial court denied the Kemethers' petition to modify or vacate arbitration award and did not enter an order confirming the arbitrator's award.  *Id.* at 126.  The Kemethers appealed from the order denying the petition, and Aetna asked this Court to quash the appeal, arguing that the Kemethers were attempting to appeal a non-appealable order.  *Id.*  We allowed the appeal, noting that, while the appeal was improperly taken from the order denying the petition to modify or vacate, the "responsibility for entering a confirming order in such a case lies with the trial judge," and "the Kemethers will not be punished for the trial court's failure to enter the required order."  *Id.* at 127 (citing *Dunlap by Hoffman v. State Farm Ins.*, 546 A.2d 1209, 1211 (Pa.Super. 1988)).  Here, as in *Kemether*, the trial court did not simultaneously enter an order confirming the award and entered judgment when it denied Torma's petition.  Therefore, we have jurisdiction to hear this appeal.

Torma raises three issues on appeal:

A. Whether the court erred or abused its discretion in concluding that the AAA's failure to enforce the August 17th Order did not constitute an irregularity rendering the Award unjust and inequitable.

B. Whether the court erred or abused its discretion in concluding that the Arbitrator's conduct did not result in Appellant being denied a full and fair hearing.

C. Whether the court erred or abused its discretion in concluding that the Arbitrator did not exceed the scope of the arbitration clause in the [Construction Contract] when he determined the Moving Contract was subject to AAA jurisdiction.

Torma's Br. at 4.

Agreements to arbitrate pursuant to the rules of the AAA are governed by Pennsylvania's common law arbitration statutes, 42 Pa. C.S. §§ 7341-42. *See Bucks Orthopaedic Surgery Assocs., P.C. v. Ruth*, 925 A.2d 868, 871 (Pa.Super. 2007). Our standard of review of an order confirming an arbitration award is limited:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to statutory arbitration or to a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award. The arbitrators are the final judges of both law and fact, and an arbitration award is not subject to reversal for a mistake of either. A trial court order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law. The appellant bears the burden to establish both the underlying irregularity and the resulting inequity by clear, precise, and indubitable evidence.

*Andrew v. CUNA Brokerage Servs., Inc.*, 976 A.2d 496, 500 (Pa.Super. 2009) (internal citations and quotation marks omitted).

In the context of a common law arbitration award, an "irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." *McKenna v. Sosso*, 745 A.2d 1, 4 (Pa.Super. 1999). "A cognizable irregularity may appear in the conduct of either the arbitrators or the parties." *Id.* "The power and authority of arbitrators are wholly dependent upon the terms of the agreement of submission, and they cannot exercise authority as to matters not included therein, or validly determine the dispute if they violate or act inconsistently with the terms of the submission." *Boulevard Assocs. v. Seltzer P'ship*, 664 A.2d 983, 987 (Pa.Super. 1995) (quoting *Sley Sys. Garages v. Transp. Workers Union of Am.*, 178 A.2d 560, 561 (Pa. 1962)).

Torma first argues that the trial court erred or abused its discretion in finding that the arbitrator's decision to allow Parrot's claim to go forward after Parrot failed to pay its arbitration fees by August 19 was discretionary and not an irregularity in the arbitration process that required modification or vacation of the award. Torma's Br. at 18. According to Torma, the arbitrator's decision not to enforce the order and allow the hearing to proceed evinced "the great deference the AAA and the [a]rbitrator granted to Parrot[,] . . . [and] clearly showed that the AAA and the [a]rbitrator brushed-off Parrot's procedural noncompliance." *Id.* Torma argues that she "was not granted such deference by the AAA or the [a]rbitrator, and was

prejudiced by their unequal treatment of the parties," which created an irregularity in the arbitration process. *Id.* We disagree.

The trial court found that the arbitrator acted within his discretion because the "irregularity [Torma] alleged is a procedural one that the arbitrator and the AAA failed to enforce their own orders and regulations." Mem. at 2. Considering "the relatively small amount of the unpaid balance and the extent of the untimeliness," the trial court found no abuse of discretion, "much less one that led to an unjust, inequitable or unconscionable award." *Id.*

Here, the parties agreed to arbitrate any disputes pursuant to the AAA's Construction Industry Arbitration Rules and Mediation Procedures ("AAA Rules"). AAA Rule 59 defines the power and authority of the arbitrator when a party has not paid the ordered fees:

> **(a)** If arbitrator compensation or administrative charges have not been paid in full, the AAA may so inform the parties in order that one of them may advance the required payment.
>
> **(b)** Upon receipt of information from the AAA that payment for administrative charges or deposits for arbitrator compensation have not been paid in full, to the extent the law allows, a party may request that the arbitrator issue an order directing what measures might be taken in light of a party's non-payment. Such measures may include limiting a party's ability to assert or pursue their claim. In no event, however, shall a party be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for such measures with the opportunity to respond prior to making any such determination. In the event that the arbitrator grants any request for relief which limits any

party's participation in the arbitration, the arbitrator shall require the party who is making a claim and who has made appropriate payments, to submit such evidence as the arbitrator may require for the making of an award.

**(c)** Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

**(d)** If the arbitrator's compensation or administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator.

AAA Rule 59. The plain language of Rule 59 shows that decisions regarding the suspension or termination of arbitration claims are wholly within the arbitrator's discretion. Declining to dismiss a claim in such a situation does not establish that the arbitrator "brushed off Parrot's procedural noncompliance," **see** Torma's Br. at 18, and does not "import[] such bad faith, ignorance of the law and indifference to the justice of the result" as to require modification or vacation of the arbitration award. **Allstate Ins. Co. v. Fioravanti**, 299 A.2d 585, 589 (Pa. 1973). We conclude that the trial court did not abuse its discretion.

Next, Torma argues that she was denied a full and fair hearing because the arbitrator stopped her counsel's cross-examination of Chambers on both the Construction and Moving Contracts and refused to view the subject walls and roof of the building. Torma's Br. at 21. Torma argues that because "the right to cross-examination is crucial to the conduct of a 'full and fair hearing[,]'" the arbitrator's unilateral stoppage of cross-examination

- 10 -

denied her such a hearing. *Id.* at 19 (quoting ***Reisman v. Ranoel Realty Co.***, 303 A.2d 511, 514 (Pa.Super. 1973)). According to Torma, she was denied a full and fair hearing because cross-examination of Chambers would have elicited relevant testimony that was material to the resolution of the case. *Id.* at 20. We disagree.

An arbitrator's decision to end cross-examination or refuse to hear testimony on the basis that such information is irrelevant or unnecessary may in some circumstances deny the examining party a full and fair hearing and require modification or vacation of an arbitration award. But to prevail, the examining party must also show that such action led to the omission of relevant, material evidence, rather than being a "mere mistake of law or fact binding upon all parties and the court." ***Smaligo v. Fireman's Fund Ins. Co.***, 247 A.2d 577, 580 (Pa. 1968). In ***Smaligo***, our Supreme Court held that an arbitrator's failure to hear an expert witness's proffered testimony about the decedent's "future earning ability and capacity" denied the plaintiffs a full and fair hearing. *Id.* at 579. In ***Allstate Ins. Co. v. Fioravanti***, 299 A.2d 585 (Pa. 1973), the Court applied ***Smaligo*** to a situation where counsel was not permitted to present a memorandum on a controlling legal issue but was permitted to argue the issue before the arbitrators. There, the Court held that while the arbitrator's decision in ***Smaligo*** led to the "complete omission of critical factual evidence," the appellant in ***Fioravanti*** had, "at most, one [f]orm of argument . . . closed off by the arbitrators." *Id.* at 588. Because the arbitrator did not preclude

all argument on the issue, the **_Fioravanti_** Court "found no denial of a full and fair hearing." **_Id._**

Here, Torma's counsel was allegedly prevented from cross-examining Chambers about the terms of the Construction and Moving Contracts, which the arbitrator ruled was irrelevant and unnecessary to the issues because he would decide the meaning of the contract terms. Because interpretation of contract terms is generally a question of law and not fact, **_see Szymanowski v. Brace_**, 987 A.2d 717, 722 (Pa.Super. 2009), we conclude that the trial court did not abuse its discretion in finding that the arbitrator, at worst, made an evidentiary error if there was an ambiguity in the contracts.[4] This case is more akin to **_Fioravanti_** than **_Smaligo_**, as the arbitrator did not exclude critical factual evidence, but rather declined to hear interpretations of the contract language. Because Torma does not allege that she was prevented from presenting legal argument regarding these interpretations, we conclude that she was not denied a full and fair hearing.[5]

_____

[4] The AAA Rules, although not binding on this Court, provide that "[t]he arbitrator shall determine the admissibility, relevance, and materiality of the evidence offered . . . . [and] may reject evidence deemed by the arbitrator to be . . . unnecessary." AAA Rule 35(b). Thus, while the arbitrator was required to afford Torma a full and fair hearing on her claims, the AAA Rules, agreed to in the arbitration clause, similarly provided the arbitrator discretion to reject evidence he considered unnecessary.

[5] Torma also asserts that there is clear evidence that the arbitrator stopped her counsel from cross-examining Chambers "on the proposed
*(Footnote Continued Next Page)*

- 12 -

Similarly, we conclude that the arbitrator's decision not to view the roof and parapet walls was not misconduct. Torma proffered testimony from an expert witness regarding the condition of the walls and roof, and the arbitrator determined that close-up inspection of the roof and parapet walls would be cumulative. Under the AAA Rules, the arbitrator was free to "reject evidence [he] deemed . . . to be cumulative." AAA Rule 35(b). Thus, the trial court did not abuse its discretion.

Torma's last claim is that both the arbitrator and the trial court erred in ruling that the arbitration clause in the Construction Contract applied to disputes arising from the later-executed Moving Contract. Torma argues that the Moving Contract is outside the scope of the Construction Contract, including the arbitration clause, because the Construction Contract's arbitration provision is "limited to disputes and issues about the design and

_(Footnote Continued)_ _____

Change Orders and the provisions of the [Construction Contract] related thereto that evidenced the proposed Changes Orders included in Parrot's claim were invalid and unenforceable pursuant to the terms of the [Construction Contract]." Torma's Br. at 20. To the extent that such testimony constituted parol evidence of the agreement, we would agree, as evinced by our ruling on Torma's jurisdiction challenge, that such evidence would have been relevant. However, instead of presenting a record or any other evidence, testimonial or otherwise, Torma merely asserts that her counsel intended to cross-examine Chambers as to the parties' intent in executing the contracts. Therefore, we conclude that Torma is not entitled to relief, as she has not presented clear, precise, and indubitable evidence regarding this alleged impropriety. **See Gargano v. Terminix Int'l Co., L.P.**, 784 A.2d 188, 193 (Pa.Super. 2001) ("[An a]ppellant bears the burden to establish both the underlying irregularity and the resulting inequity by 'clear, precise, and indubitable evidence.'") (quoting **McKenna**, 745 A.2d at 4).

construction of the renovations." Torma's Br. at 23. According to Torma, the Moving Contract is a separate contract that "has nothing to do with the design and construction of renovations to the . . . [b]uilding[.]" Rather, the parties "entered into [the Moving Contract] . . . for the sole purpose of Parrot selling Torma's personal property." *Id.* at 24. As a result, Torma argues that the arbitrator "exceed[ed] the scope of his jurisdiction when he considered the parties['] dispute arising from the Moving Contract." *Id.*

The "question . . . whether a party agreed to arbitrate a dispute is a jurisdictional question that must be decided by a court." *Smith v. Cumberland Grp., Ltd.*, 687 A.2d 1167, 1171 (Pa.Super. 1997). Therefore, the trial court must determine "whether a dispute is within the terms of an arbitration agreement." *Hassler v. Columbia Gas Transmission Corp.*, 464 A.2d 1354, 1356 (Pa.Super. 1983). The question whether an agreement containing no arbitration clause is nevertheless subject to arbitration because it is integrated into another agreement that contains an arbitration clause must be decided by the courts. *Huegel v. Mifflin Constr. Co.*, 796 A.2d 350, 354 (Pa.Super. 2002). Because "the arbitrator's authority is restricted to the powers the parties have granted them in the arbitration agreement, we may examine whether the common law arbitrator exceeded the scope of his authority." *Gargano v. Terminix Int'l Co., L.P.*, 784 A.2d 188, 193 (Pa.Super. 2001).

Here, Torma and Parrot disagree as to whether the Moving Contract was an integrated component of the Construction Contract and, thus,

subject to arbitration. If the arbitrator entered a decision on the Moving Contract without jurisdiction to hear the claim, then the award must be vacated, as a court cannot enter judgment on a claim over which it has no jurisdiction. *See Aronson v. Sprint Spectrum, L.P.*, 767 A.2d 564, 568 (Pa.Super. 2001) ("Jurisdiction is the capacity to pronounce a judgment of the law on an issue brought before the court through due process of law . . . . Without such jurisdiction, there is no authority to give judgment and one so entered is without force or effect.") (quoting *Bernhard v. Bernhard*, 668 A.2d 546, 548 (Pa.Super. 1995)). However, if the arbitrator correctly determined that he had jurisdiction over the matter and properly considered the Moving Contract claim, then the award would be proper, as Torma does not challenge the arbitrator's ruling itself but only his jurisdiction to hear the claim. Torma's Br. at 21.

Upon review of the Construction Contract and the Moving Contract, we conclude that, contrary to the apparent view of both the arbitrator and the trial court,[6] the terms of the two contracts do not clearly resolve the

_____

[6] In its lone paragraph on the issue, the trial court admits that this "question . . . may warrant closer judicial review," but concludes that the arbitrator's decision was correct:

> [O]ur review of the [Construction Contract] and [Moving Contract] does not reveal any error by the arbitrator. The Petition complains mostly about the demands for payment made by Parrot and presents little regarding how the [Moving Contract] is not ancillary to and incorporated into the [Construction Contract]. Therefore, even if we are

*(Footnote Continued Next Page)*

question whether disputes under the Moving Contract are subject to the arbitration clause in the Construction Contract.

> When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, . . . which will be given its commonly accepted and plain meaning[.] When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.

*Miller v. Poole*, 45 A.3d 1143, 1146 (Pa.Super. 2012) (internal citations and quotation marks omitted).

The Construction Contract contains an integration clause which states that the contract "represents the entire Agreement between [Torma] and [Parrot, which] supersedes all prior negotiations representations or Agreements." The Construction Contract, however, allows for amendment "by written instrument signed by both [Torma] and [Parrot]." Constr. Contract at 3. The Construction Contract also provides for certain change

---

*(Footnote Continued)*

> required to look more closely at this issue, we find that the arbitrator correctly concluded that the [Moving Contract] was in the nature of a Change Order and was therefore part of the [Construction Contract].

Mem. at 3.

orders under Article 9 and additional services under Article 2.5[7] that, while executed by separate written contract, may be covered by the terms of the Construction Contract. The Moving Contract does not specifically reference the Construction Contract, but it does include a statement that "[b]oth [Torma] and Parrot agree that [the Moving Contract] is a fair and equitable way to protect and recover costs associated with the handling and selling [of] the machines and equipment during the construction repairs to the property." Moving Contract, 6/6/14. Neither contract defines the relationship between the two.

Torma argues that the arbitration clause of the Construction Contract does not apply to the Moving Contract. According to Torma, "[t]he plain

_____

[7] Article 2.5 provides:

> 2.5.1 [Parrot] will provide the following additional services upon the request of [Torma]. A written [a]greement between [Torma] and [Parrot] shall define the extent of such additional services and the amount and manner in which [Parrot] will be compensated for such additional services.
>
> 2.5.2 Services related to investigation, appraisals or evaluations of existing conditions, facilities or equipment, or verification of the accuracy of existing drawings or other [Torma]-furnished information.
>
> 2.5.3 Services related to Owner-furnished equipment, furniture and furnishings which are not a part of this [Construction Contract].

Constr. Contract at 5.

language of the Moving Contract makes it clear that its scope applied to the moving, storing, and selling of personal property . . . . [, which] has nothing to do with the design and construction of renovations to the . . . [b]uilding." Torma's Br. at 24. Parrot argues in response that the Moving Contract "was a change order to the [Construction C]ontract as the removal of items and other preparations were necessary as part of the renovations." Parrot's Br. at 8. According to Parrot, "the parties contemplated and executed that agreement as part of the [C]onstruction [C]ontract and incorporated it and other change orders." *Id.* Because we find that both of these interpretations[8] are reasonably plausible,[9] we remand the matter to the trial

_____

[8] While neither party argues this point, we note that the Moving Contract could also be reasonably interpreted as an additional service under Construction Contract Article 2.5. *et seq.*

[9] This Court has, at least once before, concluded that a contract without an arbitration clause was nevertheless subject to arbitration because a later contract between the parties, which contained an arbitration clause, incorporated the earlier contract. *See Huegel*, 796 A.2d at 356-57 (concluding that an integration clause in the later contract for home financing, combined with "numerous references in the [later] contract to the [earlier] contract [for home improvement services] and the goods and services described therein" applied the later contract's arbitration clause "to any claims arising from the [plaintiffs'] purchase of the goods and services from [the defendant] as well as the obligations arising from the financing provided."). The *Huegel* court, however, benefitted from a later contract for financing that, in addition to containing an integration clause, referred specifically to the earlier home improvement contract and its terms. *Id.* at 356. Unlike *Huegel*, the record before us provides little detail of the relationship between the two agreements, and the later contract, while between the same parties, contains only one vague reference to the renovations.

court so that the parties may present evidence to assist the trial court in determining whether the arbitrator had jurisdiction over the Moving Contract claim.

Order affirmed with respect to Torma's allegations of prejudice and denial of full and fair hearing. Order reversed with respect to the trial court's ruling concerning the arbitrator's jurisdiction over the Moving Contract claim. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/11/2017